UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JENNIFER ELLISON DINGLER,    }
                             }
        Plaintiff,            }
                             }
v.                           }        CV 01-AR-1662-SM
                             }
MARVIN'S, INC.,              }
                             }
        Defendant.            }

**MEMORANDUM OPINION**

Before the court are the motions of defendant, Marvin's Inc. ("Marvin's"), to strike the affidavit testimony of plaintiff, Jennifer Ellison Dingler ("Ellison"), and for summary judgment.[1] Ellison instituted this action against her employer, Marvin's, on July 2, 2001, asserting claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, including the Civil Rights Act of 1991, 42 U.S.C. § 2000e, et. seq.

Ellison claims that she was subjected to sexual harassment and was discharged in retaliation for her having complained of that harassment. Ellison appends state law claims for negligence based on Marvin's alleged failure to maintain a safe workplace and wantonness because Ellison's termination was allegedly an intentional or reckless act.

---

[1] Plaintiff has married and changed her surname to Dingler after her employment by Marvin's ended. To avoid confusion plaintiff will be referred to as Ellison.

## The Material Facts,
## Some Undisputed and Some disputed

Marvin's operates a number of home improvement stores in Alabama and Mississippi. In each of its stores Marvin's has several classes of employees: Store Managers, Assistant Managers, Team Leaders and Team Players. Team Players are hourly sales associates with no supervisory authority. On May 21, 2000, Marvin's hired Ellison as a Team Player in its Albertville store. Ellison's first day on the job was May 24, 2000. Marvin's hires its Team Players subject to their satisfactory completion of a ninety day "introductory period." Marvin's introductory period provides an opportunity to scrutinize a new employee's performance in order to determine whether to convert the employee to "new hire" status.

On August 12, 2000, Ellison was discharged. According to Marvin's, management made the decision to terminate Ellison because the Albertville store was over budget and needed to eliminate part of its payroll. Marvin's' position is that Ellison was selected for termination because she was still in her introductory period, and management was not satisfied with her performance. Ellison disputes Marvin's' proffered reasons for terminating her and contends that Marvin's true motivation was retaliation for her complaint of sexual harassment.

Ellison says that she was being sexually harassed by Andy Chastain, a fellow employee. Ellison testified that her

2

harassment by Chastain began soon after she began working for Marvin's. Before July, 2000, according to Ellison, Chastain's harassing conduct had only been verbal: talking about her butt, saying he would like to f... her, and saying he wanted to have a threesome with her. When Ellison asked Chastain to stop speaking to her in that manner, instead of leaving her alone, his offensive conduct escalated. He began touching Ellison in inappropriate ways, including: pinning her in a closet and trying to kiss her, pulling her in his lap, sticking his hand between her legs. At this point, Ellison says that Chastain's conduct became more than she could deal with, so she finally reported him to her immediate supervisor, Lori Howell ("Howell").[2] Ellison was terminated later the same day.

Marvin's has a written policy against sexual harassment and a published procedure by which an employee can seek relief from harassing behavior. Ellison did not invoke that procedure until the day she was fired.

Marvin's contends that store management requested and received approval of the Corporate Director of Human Resources, to terminate Ellison on July 25, 2000. It is Marvin's' position that on August 10, 2000, the Store Manager made arrangements with the office manager to meet with him and Ellison in order to

---

[2]According to Ellison's affidavit, she did not report Chastain sooner because she was friends with the woman Chastain was dating.

3

advise Ellison of her termination. Marvin's contends that Ellison left work on August 10, 2000, before she could be told the bad news. Marvin's also contends that because another involved employee was not going to be in the office on August 11, 2000, the meeting to terminate Ellison did not occur until August 12, 2000. According to Marvin's, the fact that Ellison was terminated on the same day she complained of sexual harassment was just a coincidence. It is Marvin's' position that the decision to fire Ellison had been made days before the event, and that her complaint of sexual harassment had nothing to do with it.

Ellison not only points out that Marvin's' convoluted explanations sound fishy on their faces, but she disputes all of Marvin's' assertions regarding its version of her termination.[3] Ellison points out that she had already received her work schedule for the following week from her supervisor, Howell. Howell did not know about the termination when she made the schedule. (Howell Depo., Ex 2).

When, on August 12, 2000, Ellison complained of Chastain's

---

[3] Ellison disputes that management requested approval before terminating her; that Marvin's decision to terminate her was made in July, 2000; that the decision was made in advance of her termination; that she was terminated as part of a payroll deduction; that Marvin's advised Howell, Ellison's immediate supervisor, of Ellison's termination on August 10, 2000; that prior to the morning of August 12, 2000 Marvin's had plans to terminate her.

4

harassing conduct, Howell informed Ellison that she would report Ellison's complaint to management. Howell did thereafter inform James Hall ("Hall"), the Assistant Store Manager, of Ellison's complaint, but exactly when the complaint was forwarded to management is not reflected. Marvin's necessarily says that it learned of Ellison's complaint after the decision to fire her had been made, but the exact sequence of events on the day of termination is unclear. Ellison told Hall of the harassment after he had heard it from Howell. Ellison told Rachael Cates ("Cates"), an employee of Corporate Human Resources, of the harassing conduct on August 15, 2000. Chastain was eventually terminated for the sexual harassment of another employee (Cates Affidavit, p. 3 at 12 & 13).

### Sexual Harassment Claim

This is not a sexual harassment *quid pro quo* case. It is an hostile environment case. Chastain was not Ellison's supervisor and had no authority over her. Therefore, in order for Ellison to establish a *prima face* case of hostile work environment, she must show not only that she belonged to a protected group and was subjected to unwelcome harassment based on her gender, but that the harassment affected a term, condition or privilege of employment, that it was both pervasive and abusive, and that Marvin's knew of it and failed to prevent it. It is, of course, possible to prove by circumstantial evidence that an employer knew of workplace

misconduct as a result of its pervasiveness, its openness and its obviousness. In this case, however, Ellison offers no evidence to bring Chastain's conduct beyond the realm of the private and clandestine. For aught appearing it was not pervasive. Marvin's could not take remedial action against something of which it was not aware.

Not only does Ellison fall short of proving that Marvin's knew or should have known of the harassment while it was occurring, but Marvin's has interposed the affirmative defense provided by *Ellerth/Faragher*. The first occasion upon when Ellison complained was on the very day she was fired. *Ellerth/Faragher* requires of an employee that she reasonably avail herself of any publicized internal complaint procedure. Not wanting to embarrass her harasser's girlfriend is not an excuse for Ellison's failure to complain to her supervisor shortly after Chastain's first offending conduct, and certainly, long before she did, in fact, complain.

### Retaliatory Discharge

By firing Ellison, when it did, Marvin's has escaped the sexual harassment claim, only to enhance, if not to create, a viable retaliation claim.

Ellison has established a *prima facie* case of retaliatory discharge pursuant to Title VII by showing: 1) she was engaged in a protected activity when she complained of Chastain's harassment; 2) Marvin's took the ultimate adverse employment

action, namely, termination; and 3) the existence of a causal link between the protected activity and the adverse employment action. Ellison satisfies all of these elements of her retaliatory discharge case. The temporal proximity of Ellison's complaint and her discharge is enough, in and of itself, to create a jury question. The claim of retaliation certainly cannot be dismissed on summary judgment, that is, unless Marvin's' non-retaliatory reasons are not arguably pretextual.

### **Pretext**

One of Marvin's' proffered reasons for terminating Ellison is that her store needed to reduce its payroll. Ellison successfully raises credibility issues regarding this articulated reason by presenting the following documents created by Marvin's:[4] List of "Probationary Employees from 2/01/00 until 11/30/2000"; "Terminations or Resignations from 3/01/2000 until 10/31/2000; "Current Workforce Roster dated January 29, 2001." (Creel Affidavit, Exhibits 1,2,3).
The "Probationary List" shows that one employee was hired by Marvin's just two days after Ellison was terminated, and two more employees were hired on August 28, 2000, just two weeks later. The second document, "Terminations and Resignations," shows that two of the employees hired after Ellison's termination "left on

---

[4]The documents were produced by Marvin's. The documents are from Ellison's Equal Employment Opportunity Commission's (EEOC) investigation file.

[their] own accord," and that the two employees hired on August 28, 2000, were still employed with Marvin's as of January 29, 2001. The "Terminations and Resignations" list also shows only three terminations in the months succeeding Ellison's termination besides the two mentioned above:

| Name | Date | Reason terminated |
|---|---|---|
| Rickey A. Colley | - August 29, 2000 - | None specified |
| Laura E. Daniels | - August 20, 2000 - | Failed to appear or call |
| April M. Gilliand | - August 30, 2000 - | Unknown |

In fact, Marvin's continued to hire rather than to terminate employees. According to the "Current Workforce Roster" dated January 29, 2001, a total of eleven employees were hired between August 28, 2000, and December 15, 2000, who remained employed through January 29, 2001. (Creel Affidavit, Ex. 3).

Ellison's evidentiary submissions raise serious issues of credibility regarding Marvin's' explanation for Ellison's termination and constitute substantial proof of pretext.

Marvin's also contends that its decision was made prior to August 12, 2000. It submits in support of this contention an E-mail from Hall to Cates listing Ellison as a possible termination. (Buchanan Depo., Ex 1). Ellison disputes that Marvin's made the decision to terminate her prior August 12, 2000, and submits evidence that the associates listed in that E-mail were not terminated as part of a "Layoff." (Ellison's Ex.

8

1).

Of the names on the list, Michele Collins is the only one listed as "LAYOFF" on July 31, 2000, and according to the testimony of Kenneth Buchanan, the Store Manager, she was a "voluntarily layoff." Sherry Stoner, the second name on the list was still employed with Marvin's as of January 29, 2001. Angela McCullum, the third name on the list, is shown as terminated on November 30, 2000, for an unknown reason. Joyce Amber Ivey, the fourth person on the list quit December 23, 2000. And John Maynard was laid off on January 22, 2001, some five months after Ellison was terminated. Ellison is listed as last on the list.

This evidence, in the aggregate, creates a genuine issue as to the credibility of Marvin's' "termination list" and its assertion that payroll needed to be reduced.

Marvin's second articulated reason for selecting Ellison for termination is her inadequate performance. Marvin's contends that Ellison's performance was substandard for a probationary employee, citing problems with keeping her aisle clean and visits from friends while she was working. Ellison disputes this allegation and, to the contrary, contends that she received no complaints about her performance out of the ordinary training recommendations. Howell, Ellison's supervisor, verified that Ellison corrected the cleaning problem once it was pointed out to her. However, Howell stated that Ellison continued to have

visitors while on duty.  In her deposition testimony, Howell, Ellison's supervisor, stated that Ellison was an average employee, that she had no attendance problems, she did her share of the work, she usually obeyed orders, and she did not have an attitude problem. (Howell Depo., pp. 28-29).  Howell's testimony creates genuine issues regarding Ellison's performance.  Because there are credibility issues regarding Marvin's' second reason for firing Ellison, there is a jury case for pretext.

### State Law Claims

Ellison acknowledges that Marvin's has a sexual harassment policy in place, and that the policy was disseminated to all employees, including Ellison.  Ellison, nevertheless, contends that Marvin's had a duty under Alabama law to provide a safe place for her to work.  Specifically, Ellison contends that Marvin's breached this duty by failing "to train [its] employees about sexual harassment, by failing to investigate the complaint made by [Ellison], by retaining Chastain as an employee, by terminating [Ellison], and by failing to follow [its] company policies." (Count Two, Complaint).  Additionally, Ellison contends that Marvin's Store Manager, Kenneth Buchanan, "with full knowledge of its own company policy against sexual harassment and its company promise to its employees that any employee can raise concerns and make reports without fear of reprisal," terminated her the same day she complained of sexual

10

harassment. (Count Three, Complaint). Ellison asserts that "such conduct was in reckless disregard of [her] rights and constitutes wantonness." *Id.*

Ellison has not argued seriously in defense of Marvin's motion for summary judgment aimed at her state law claim of negligent failure to provide a safe workplace. If she has not abandoned this claim, it nevertheless must be dismissed for lack of any proof of notice to Marvin's that it had a problem before it chose to fire Ellison instead of doing something about Chastain. The complaint by Ellison to Howell on August 12, 2000, followed within hours by her termination does add up to a *prima facie* case of wanton conduct amounting to a tort under Alabama law as this court understands *Machen v. Childersburg Bancorporation*, 761 So. 2d 981 (Ala 1999). This one Alabama tort claim survives Marvin's motion for summary judgment.

### Conclusion

For the foregoing reasons summary judgment for Marvin's will be denied in part and granted in part. A separate and appropriate order will be entered.

DONE this 18th day of September 2002.

_____

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE